[Civ. No. 6025.   Third Appellate District.—January 12, 1939.]

CHARLES ARMSTRONG, Respondent, v. ROBERT DAVIS FORD, Appellant.

Ray W. Hays for Appellant.

C. Ray Robinson, James D. Garibaldi and Willard B. Treadwell for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment of $5,000 which was rendered against him in an automobile casualty case.

It is contended the evidence fails to show that the defendant was guilty of negligence which proximately caused the accident; that the damages which were awarded are excessive. It is asserted the court erred in receiving evidence and in giving to the jury certain instructions.

The respondent was riding as a guest in a Chevrolet coach driven by Simmons Clevenger. At 7 o'clock on the morning of June 22, 1937, they were traveling southerly on the public highway through Atwater toward Merced. There were then very few automobiles on the highway. They were going to work in the Woods packing shed adjacent to the roadway on the easterly side thereof in the southern outskirts of the town, where the respondent was employed as a watchman at thirty-five cents per hour. He was sixty-one years of age and in good physical condition. The day was clear and the highway was dry and level. Approaching Atwater from the south the highway describes a long, gradual letter S curve which extends to within 400 feet of the city limits. As the Chevrolet machine approached this curve, where it was necessary to turn across the highway to the left to reach their place of business, the occupants of that automobile observed a truck approaching from the south. It was then only a short distance away. Following the truck at considerable distance around the curve they also saw the defendant's Buick machine traveling at what appeared to be a reasonable rate of speed. Clevenger reduced the speed of his machine to permit the truck to pass before he made the lefthand turn across the pavement. He looked both ways for other machines. When he started to turn the defendant's automobile

was about 300 feet away. Clevenger was then traveling at a rate of only eight or ten miles per hour.

The defendant testified that as he approached the town of Atwater he was traveling sixty or sixty-five miles an hour. But he said that when he first saw the respondent's car he was running only about forty-five miles an hour. He said that the truck which preceded his machine concealed from his view the car in which the respondent rode and that when he first saw it after the truck had passed, it was crossing the highway about a hundred feet ahead of him. The defendant's automobile struck the car in which the plaintiff was riding with such force as to knock it from the roadway and to cause it to collide with a telephone pole twenty-eight feet away. The impact of plaintiff's machine shattered the pole and demolished the car. The machine was a total wreck. As a result of the accident the plaintiff was rendered unconscious. He sustained a concussion of the brain, two fractured ribs, a severe injury to his left side and chest, an injury to his left hip, and numerous bruises and contusions. He was taken to the county hospital and treated for his injuries for several days. His eyesight was temporarily impaired. He suffered great pain throughout his side and chest. At the time of the trial, which was nearly five months after the accident occurred, he was still suffering pain and he was then unable to use his left arm to its full extent.

The cause was tried with a jury, which returned a verdict in plaintiff's favor for $5,000. A judgment was accordingly entered for that amount. From that judgment the defendant has appealed.

■ We are of the opinion there is ample evidence to support the implied finding of the jury that the accident occurred as a proximate result of the defendant's negligence. The jury was warranted in assuming that he was running at an excessive rate of speed around a curve within the city limits where highway signs restricted the speed of vehicles to twenty miles per hour. The occupants of the car in which the plaintiff was riding saw defendant's machine at a distance of three hundred feet. After the truck had passed the plaintiff's machine was proceeding to cross the highway in clear view directly in front of the defendant's automobile. There was still about one hundred feet, in which space the defendant had an opportunity to stop his machine or divert its course so as to avoid the collision. There appears to be

no reasonable excuse for him to have failed to observe the machine directly ahead of him, or to have stopped his automobile. In fact, the plaintiff's car was nearly across the paved portion of the highway when it was struck. The rear wheels of his machine has passed the central white line some distance. If the defendant had slackened his speed somewhat, he evidently could have avoided the accident. The negligence consists of excessive speed of the machine and inattention of the driver thereof.

■ We are unable to say as a matter of law that the judgment of $5,000 is excessive under the circumstances of this case. Doctor Jackson testified with respect to the plaintiff's injuries:

"When I first saw him he had a concussion of the brain, he had two fractured ribs, an injury to the left side of his chest, an injury to his left hip region and severe bruising."

The plaintiff was confined to the hospital for several days. He suffered great pain and the use of his arm was impaired even to the time of the trial of this case, nearly five months after the accident occurred. The effect of broken ribs on a person of the age of plaintiff is frequently quite serious.

■ Unless the amount of damages which is allowed by a jury to compensate for personal injuries received is so excessive as to shock the conscience or to enforce the inference that it was the result of passion or prejudice, it is not the province of a court of review to interfere with the reasonable discretion of the jury. In the case of *Rannard* v. *Harris*, 121 Cal. App. 281, at page 286 [8 Pac. (2d) 864], under circumstances quite similar to the facts of this case, a judgment for $7,500 was sustained. The court there said:

"The determination of a sum of money which will be deemed to adequately compensate one for damage suffered on account of personal injuries sustained and the pain and suffering incident thereto, necessarily rests largely in the sound discretion of the trial judge or of the jury. This discretion may not be interfered with unless it clearly appears that the amount which is awarded is so grossly excessive as to shock the conscience or enforce the inference that it is the result of passion or prejudice. (20 Cal. Jur. 101, sec. 65; *Even* v. *Pickwick Stages System*, 109 Cal. App. 636 [293 Pac. 700].)"

The case of *Hoover* v. *King*, 134 Cal. App. 16 [24 Pac. (2d) 871], relied on by the appellant, is readily distinguish-

able from this case. In that cause the respondent received no fracture of bones. She was not taken to a hospital, but after remaining at the scene of the accident to examine the automobile, she walked to a drugstore, accepted a ride home and was merely treated with hot applications. The court said "her injuries appeared to be quite superficial in their nature".

The court did not err in receiving evidence over the objections of the defendant. In a series of half a dozen questions, without objection having been imposed until after they were all answered, the plaintiff testified that he was usually employed at manual labor; that he had a wife and six children. The attorney for the defendant then objected on the ground that evidence of the family relationship was incompetent. The attorney for plaintiff promptly abandoned that line of evidence with the reply, "All right." This constituted a voluntary withdrawal of the evidence. There was no motion to strike the evidence from the record. That ruling was not prejudicial.

Over objection of the defendant the plaintiff was permitted to testify that he had worked for the Woods Packing Company ten hours per day for a period of time the preceding season, for which he was paid thirty-five cents per hour, and that he was going to get "forty cents an hour" for his services during the season of 1938. He said he was "told . . . the wages we was supposed to get" by some of the workmen. He further said, "I went [on duty] night watching at the Wood Packing Company at $2.50 a night." Just prior to the accident he had been working with that company about a month and a half.

There is no merit in the appellant's contention that the evidence regarding the plaintiff's wages is hearsay, or that it is incompetent because special damages for the loss of wages was not pleaded. The plaintiff testified positively that at the time of the accident he was employed as watchman for which he received the agreed sum of $2.50 per day. The compensation which he received the previous year for a different class of work was immaterial, but it was harmless. The fact that other workmen told him they were to receive forty cents per hour for packing fruit that season was also harmless. The difference between the wages paid the previous year and what the plaintiff had been told packers would receive in 1938 is trivial. The evidence is harmless since

the plaintiff was working as a watchman at a fixed wage, and not as a fruit packer.

■ The evidence of the plaintiff's earning ability was competent under the issue tendered by the complaint in the allegation that because of the permanent character of the injuries received his earning ability would be impaired. (*Treadwell* v. *Whittier,* 80 Cal. 574 [22 Pac. 266, 13 Am. St. Rep. 175, 5 L. R. A. 498]; *Dutro* v. *Castoro,* 16 Cal. App. (2d) 116 [60 Pac. (2d) 182]; *Graham* v. *Yellow Cab Co.,* 125 Cal. App. 141, 144 [13 Pac. (2d) 773]; 1 Bancroft's Code Pleading, p. 285, sec. 166; 13 Standard Ency. of Pleading and Practice, p. 374, sec. 4.)   In the authority last cited it is said in that regard:

"A complaint showing a physical and mental condition of plaintiff in consequence of the injuries, which would necessarily result in an impairment of future earning capacity, is sufficient to sustain a judgment therefor.

"Averments of inability to attend to the usual vocation, or to perform any labor, *or of a permanent injury* of such a character as indicates an impairment of earning capacity are sufficient to authorize recovery of damages for impairment of such capacity."

In 1 Bancroft's Code Pleading, page 285, section 166, it is said:

"In an action for personal injury suffered, the plaintiff may recover all the damages proximately caused by the tort, under a general allegation of the whole of the amount of damage caused.   And so, the plaintiff is entitled to recover damages for any impairment of his capacity, as a previously healthy person, to earn money, . . . under a general averment of damage."

In the present case, after alleging the specific nature of the injuries received, including broken ribs and a concussion of the brain, it is asserted, on information and belief, that the result of such injuries would be permanent, after which general damages amounting to $10,000 were demanded.   The plaintiff contended at the trial that he had a permanent injury of his left side and arm which prevented him from working continuously.   It is true that the physician said he thought he would fully recover in the course of time.   But the issue of permanent impairment rendered the evidence of earning capacity competent.

354

■ The defendant testified that he was expected to be in Rio Vista "sometime after 8 o'clock" that morning. It was not prejudicial error for the court to overrule defendant's objection to plaintiff's offer to prove the distance from Atwater to Rio Vista. This evidence was proffered as tending to show the excessive rate of speed at which the defendant's machine was running at the time of the accident. In plaintiff's offer to prove the distance, Mr. Robinson said in the presence of the jury that he had ascertained from the automobile association that it was 163 miles from Merced to Rio Vista. To this offer counsel for the defendant replied that the proof was immaterial. The court overruled his objection. Mr. Robinson said "Then that will be considered?" to which inquiry defendant's attorney replied, "I won't stipulate." Mr. Robinson said the court may take judicial notice of the distance, "so, we will leave the record that way". There was neither a motion to strike the statement of counsel from the record nor to request the jury to disregard it. The statement is not prejudicial. It adds nothing of importance to the facts already adduced. The defendant admitted that he was in a hurry to reach Rio Vista. He testified in that regard:

"Q. Did you tell him [the officer] you were in a hurry to get to Rio Vista? A. I may quite possibly have told him that."

The defendant admitted that he was in so much of a hurry that he drove his machine on straight stretches seventy miles an hour. He said, "In many of the straight stretches below Merced I had been traveling 70 miles an hour."

■ The appellant contends that the court erred in giving to the jury the following instruction:

"If you find that the plaintiff Charles Armstrong is entitled to recovery, the measure of his recovery is what is denominated as compensatory damages; that is, such sum as will compensate him for the injuries, if any, he has sustained. The elements entering into this damage are as follows: The value of his time, if any, during the period he has been disabled as a direct and proximate result of said injuries; if the plaintiff's power to earn money in the future has been impaired by the injuries, if any, such sum as will compensate him for such loss of power; such reasonable sum as the jury may award for physical pain and mental suffering, if any, or reasonably certain to be suffered in the future,

from the injuries, if any. The last two elements are from necessity left to the sound discretion of the jury, but in any event the damages must be just, and cannot exceed the sum alleged in the complaint, to-wit: $10,000.00.''

The foregoing instruction was neither misleading nor erroneous. An instruction containing the same language which is here complained of was approved by the Supreme Court in *Storrs* v. *Los Angeles Traction Co.*, 134 Cal. 91 [66 Pac. 72]. As we have previously said, under an allegation of permanent injury, which was made in the present case, the loss sustained on account of impaired earning capacity as a proximate result of the injury sustained may be considered under a general demand for damages.

The record contains substantial evidence to justify the giving of the instruction regarding the anxiety or fear of future loss of earning capacity or pain on account of the injury which the plaintiff received to his arm. He testified in that regard:

''It was the pain I had in here from reaching, trying to reach out with different angles with that hand, the pain gets so severe I would have to quit work. . . . Q. Do you feel any worry or consternation about whether you will regain the use of that? A. I don't think much chance of regaining the use of it, it does worry me considerably.''

The judgment is affirmed.

Pullen, P. J., and Ross, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 11, 1939, and the following opinion then rendered thereon:

THE COURT.—The petitioner contends that the court erred in stating in its opinion that a truck preceded his automobile as he approached Atwater from the south, asserting that on the contrary the truck had passed plaintiff's automobile and was traveling south. Upon examination of the record we are satisfied there is evidence that a truck preceded the defendant's automobile, traveling toward Atwater, as stated in the opinion. Mr. Clevenger testified in behalf of the plaintiff:

''After making the turn out of Atwater toward Merced, after we passed the double line, which is just out of Atwater,

*there was a truck come a meeting us,* they was too close to make the turn in to the wood shed where we was to work and there was a car come from behind us that wanted by.''

On cross-examination, in reply to the question ''So when you saw this car coming from behind you and the truck coming . . . toward you, you pulled off with your two left wheels still on the pavement?'' he replied, ''Yes. . . . After the truck and car had both passed.''

Other facts related appear to be supported by the evidence or are so immaterial as to require no change.