THE MUREN COAL AND ICE COMPANY

*v.*

HERBERT HOWELL, Admr.

204    515
210    239

204    515
115a   383

*Opinion filed October 26, 1903.*

DAMAGES—*when instruction upon subject of damages is too broad.* An instruction in an action for causing the death of plaintiff's intestate is too broad which authorizes the jury, in assessing damages, to "give to the plaintiff such a sum as in your judgment will fairly compensate the widow and next of kin for such pecuniary loss, not to exceed, however, the amount sued for."

*Muren Coal and Ice Co. v. Howell,* 107 Ill. App. 1, reversed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. M. W. SCHAEFER, Judge, presiding.

This is an action in case, brought in the circuit court of St. Clair county against the appellant company to recover damages for the death of the appellee's intestate, August Schmidt. The trial resulted in verdict and judgment in favor of the appellee. An appeal was taken to the Appellate Court where the judgment was affirmed; and the present appeal is prosecuted from such judgment of affirmance.

The amended declaration, filed on April 21, 1902, to which the plea of not guilty was filed, and upon which

issue the case was tried, consists of two counts, which, as set forth in the abstract of the record filed herein by the appellant, are as follows:

"The first count alleges, as the previous declarations had, that the defendant was the owner of a coal mine and operating it; that August Schmidt was in the employ of the defendant as a coal driver, his duties requiring him to haul empty coal cars from the bottom and distribute them throughout the coal mine wherever needed, and to pull loaded coal cars from the entries and rooms to the bottom of the shaft, so that they might be hoisted; that there were, prior to said date, a large number of entries and rooms in said coal mine with laid tracks for the transportation of coal; that it was the practice of defendant and consistent with good mining to clear away and remove slate, clod and other substances from both sides of the track therein for a sufficient distance to allow drivers hauling coal over said railways to pass around the sides of coal cars on said railway tracks wherever there was room between the sides of said railway tracks and the sides of the entry, without coming in contact with slate, dirt, etc., thereby endangering such drivers, while in the discharge of their duties in said coal mine; that said drivers had knowledge of said practice, relied on it, and expected defendant to keep and maintain the said railway tracks free and clear of obstructions; that on the 28th day of March, 1900, a large lot of slate, clod, dirt, etc., fell from the roof of the eighth west entry, leading off the main south entry in said mine on the railway track at a point where there was ample room between said railway track and the 'rib side' of said entry to allow the drivers to pass between said coal cars on said railway track and the 'rib side' of said entry, and obstructed all that portion of said entry, lying between said railway track and the 'rib side' of said entry, so as to prevent drivers hauling coal therein from passing around coal cars on said side of said railway track, which

rendered the said railway track unsafe and dangerous to drivers hauling coal through said entries over said railway track; that defendant had notice of the fall of said slate, and that same was an obstruction to that part of the said entry and the said railway track, and would prevent drivers, passing through said entry, from passing around coal cars on said track at that point on that side of said entry, and that it rendered said entry unsafe and dangerous; that defendant failed to remove said obstructions and abate said dangerous conditions, but negligently permitted the same to remain there until said August Schmidt was injured, well knowing said obstructions rendered said entry unsafe and dangerous; that August Schmidt on said date was hauling two loaded coal cars along said railway track to said entry, exercising due care and without notice or knowledge that said slate, etc., had fallen from the roof of said entry, or that said entry was obstructed, and that, when he reached said obstructions, he discovered a coal car on said railway track immediately in front of him, and seeing that a collision between said cars he was hauling, and said car standing on said railway track, was inevitable, and that he would be likely to be injured, attempted to escape said collision and injury by trying to get off said railway track on the side so obstructed, but came in contact with the slate and other obstructions, which had fallen from the roof, and which prevented said August Schmidt from escaping in that direction, and threw him back on the railway track between said cars, and allowed said cars to crush him, from the effects of which he afterwards died; that the death of the said August Schmidt was the direct result of the negligence of defendant in permitting said railway track and entry in said coal mine to be and remain obstructed as aforesaid, and alleges administration and next of kin, etc.

"The second count alleges, as the other counts, that the defendant was the owner of a coal mine and operat-

ing it, and then avers there were a large number of rail-. way tracks in certain entries, cross-cuts and rooms, used by defendant in transporting coal by means of draught animals and coal cars in charge of a driver; it was the duty of the defendant to keep said roadways and railway tracks, over which the driver was compelled to pass, in a reasonably safe condition and free from obstructions; that the defendant negligently allowed and permitted a coal car to stand on a certain railway track, and a large amount of coal, slate, etc., to remain on the side of said railway track near the said standing car obstructing the same, and making it dangerous and unsafe for the driver to pass there while in the discharge of his duties; that on the 28th day of March, 1900, one August Schmidt was in the employ of the defendant, as a driver in charge of a mule and box cars in said coal mine; his duties were to drive said mule and cars over said railway track, and, while he was hauling two loaded cars along said railway track in said mine, near said obstruction, in the discharge of his duty and in the exercise of due care, and without notice of said obstructions near said standing car, said two cars, being hauled, collided with said standing car, catching him between said two cars and said standing car, crushing and injuring him so that he died from his injuries; that, upon seeing said standing car, said August Schmidt undertook to escape said collision by going from said railway track on the side thereof that was so obstructed, and was thereby prevented and thrown back upon said railway track and between said cars by reason of said obstructions, and was killed." Then follows an averment that plaintiff is administrator, and that he left next of kin, etc.

Other pleas besides the general issue were filed to the declaration, but as no errors have been assigned in regard to the issues made upon these other pleas, and as no question upon the record arises upon them, they will not be here noticed.

WISE & McNULTY, for appellant.

WEBB & WEBB, and DILL & WILDERMAN, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—When the plaintiff rested, and at the close of all the testimony, the appellant asked the court to instruct the jury in writing to find the appellant not guilty as to the first count of the declaration, which request was refused; and appellant also requested the court to instruct the jury to find the appellant not guilty as to the second count of the declaration, which request was also refused. To such refusal the appellant then and there excepted. The question is thus raised, whether or not the evidence tends to establish the cause of action; that is to say, whether or not the evidence tends to show that the appellant was guilty of such negligence, as caused the injury, which resulted in the death of August Schmidt, and whether or not the deceased August Schmidt was in the exercise of due care for his own safety, when the injury that resulted in death occurred.

In their opinion deciding this case the Appellate Court say: "The evidence as a whole, with the reasonable inferences deducible therefrom, fairly and clearly tends to prove: that appellant owned and operated a coal mine, in the underground workings of which there were many entries and rooms; that it was the practice, in the operation of the mine, to clear away the fallen slate and debris from both sides of the track wherever there was sufficient room for a driver to go in case of danger, and this work was usually performed by a servant of appellant denominated a 'slate shifter;' that deceased knew of such practice and was governed in his conduct thereby; that the part of the entry, in which he was injured, was new; that two days before the injury a large quantity of slate and other substances had fallen from the roof, completely blocking the entry and extending for a

distance of about twenty feet lengthwise of it; that the superintendent saw this condition, and, with full knowledge of it, left the mine and went to Springfield; that two miners from an adjacent room and another employe of appellant shoveled the debris off the track sufficiently to allow cars to pass along it, but, in doing so, left slabs of slate and part of the debris, standing and piled against the wall on the 'rib side' of the track, obstructing the space between the track and the wall; that deceased had never been in that part of that entry and knew nothing of the conditions, when on March 28, 1900, he was directed to go in there and bring out some cars; that there was no light, except from his lamp, and from that of a miner sitting on one side of the entry some distance from him; that the darkness was such as to greatly obscure the surroundings; that, when he had taken his mule in and hitched on to two cars and started out, on a down grade, he collided with a car, which another driver had left on the track, and, discovering his peril as the cars were about to strike, he attempted to escape on the 'rib side,' but was prevented by the slate and debris, which obstructed the space on that side, and, before he could cross to the opposite side, was caught and crushed between the cars."

In view of the facts, which the evidence thus tends to establish, there was evidence, tending to prove that the appellant was guilty of negligence and that the deceased was in the exercise of due care. Therefore, the court committed no error in refusing to instruct the jury to find the appellant not guilty.

*Second*—Appellant claims that the trial court erred in giving certain instructions asked by the appellee, and in refusing to give certain instructions asked by the appellant. Among the instructions, given for the appellee, was the following instruction, numbered 29, to-wit:

"The court instructs the jury that, whenever the death of an individual is caused by the negligence or careless-

ness of a person, company or corporation, and is not the result of his own carelessness or negligence, then, and in every such case, the company, person or corporation, guilty of such carelessness or negligence, is liable to an action for damages, and the amount recovered in every case is for the widow and next of kin of such deceased person, and, in every such case, the jury may give such damages as they may deem a fair and just compensation, with reference to the pecuniary injuries, resulting from such death to the widow and next of kin of such deceased person, not to exceed, however, the sum of $5000.00; and, if you believe from the evidence in this case, that August Schmidt, while in the employ of the defendant was killed, and that his death was due to the carelessness or negligence of the defendant as charged in the plaintiff's declaration, or in the first or second count, and that his death was not the result of his own carelessness or negligence, and that he left a widow and next of kin, who suffered pecuniary injuries by reason of his death, then your verdict should be in favor of the plaintiff; and, if you believe, and from the evidence find, the defendant guilty, then it will be the duty of the jury to assess the plaintiff's damages, and, in doing so, you may take into consideration the pecuniary injuries resulting to the widow and next of kin, if from the evidence you believe there is a widow and next of kin and that they have suffered pecuniary injury or loss on account of the death of said August Schmidt, and give to the plaintiff such a sum as in your judgment will fairly compensate the widow and next of kin for such pecuniary injury or loss, not to exceed, however, the amount sued for in this case."

The above instruction must be regarded as erroneous under previous decisions made by this court.

In *Keightlinger* v. *Egan*, 65 Ill. 235, which was an action of trespass on the case, the court gave to the jury an instruction, which told them that they "should find for

the plaintiff such damages as in their judgment, from the evidence in this cause, the plaintiff ought to recover, not exceeding the sum of $3000.00;" and in regard to this instruction we there said (p. 238): "The instruction was wrong, upon the point of damages, in telling the jury they might find for the plaintiff such damages as in their judgment from the evidence in the cause the plaintiff ought to recover. This left the jury free scope to give such damages as, according to their individual notions of right and wrong, they might think the plaintiff ought to recover, unguided by any legal rule of damages, and without regard to the damages sustained."

In *Waldron* v. *Marcier*, 82 Ill. 550, an instruction was held to be erroneous, which directed the jury: "If they found for the plaintiff, to allow such damages as they believed from the evidence, she was entitled to;" and we there said (p. 553): "It should have been such damages as she had sustained, and not have given to the jury the wide latitude of allowing her such damages as they might deem that she was entitled to."

In *Chicago, Rock Island and Pacific Railroad Co.* v. *Austin*, 69 Ill. 426, the court gave to the jury the following instruction: "The jury are instructed that, by the statute of Illinois, the plaintiff in this case cannot recover more than $5000.00, and if they believe, from the evidence, that the plaintiff is entitled to recover, they will render a verdict for no more than that amount;" and in regard to this instruction we there said (p. 428): "By all the rules of philology, that is but telling the jury they must render a verdict for $5000.00. It is true, the jury did not render such a verdict, but was it not a strong, persuasive argument addressed to them by the court to render a large verdict? The court say to the jury, in effect, you cannot render a verdict for more than $5000.00, but it is expected you will render a verdict for that amount. Such an instruction could not fail to have had an improper influence on the jury, and, in a doubtful case like this, the

verdict, rendered either way, not subject to be disturbed, to tell the jury they must find to the extent of the law, was improper, and ought to prejudice the finding."

In *City of Freeport* v. *Isbell*, 83 Ill. 440, the jury were instructed as follows: "The jury should give the plaintiff such damages as they, under their oaths, can say will be a fair compensation for said injury, not exceeding, however, the sum of $10,000.00, the amount claimed in the plaintiff's declaration;" and in regard to this instruction we there said (p. 443): "The law required the jury to determine the liability of the defendant from the evidence, and from that alone; and an instruction which would permit them to enter into an open field of investigation cannot be sustained. The instruction should have been modified, or the court should have refused it."

In *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Jenkins*, 174 Ill. 398, where an instruction told the jury that, under certain contingencies, "you should find for the plaintiff and fix his damages at such sum as you think right, not exceeding the amount claimed in the declaration," we said in regard to the instruction (p. 409): "No reference is made to the evidence in the case. This form of instruction is erroneous and has been frequently condemned by this court."

The case at bar is close upon the facts, and the testimony is conflicting. It was important, therefore, that the jury should be correctly instructed as to the rule of damages applicable to the case. (*Dady* v. *Condit*, 188 Ill. 234). No other instruction was given on either side, which can be said to have corrected, or modified in any way, the errors contained in the above quoted instruction, numbered 29.

For the error in giving the twenty-ninth instruction, the judgments of the Appellate Court and of the circuit court are reversed, and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.                *Reversed and remanded.*