[Civ. No. 878.    Third Appellate District.—November 10, 1911.]

## C. J. EHAT, Respondent, v. J. H. SCHEIDT, Appellant.

ACTION FOR PERSONAL INJURIES—BATTERY BY DEFENDANT—EVIDENCE—
NATURE OF INJURIES.—In an action to recover damages for personal
injuries, inflicted by defendant upon the plaintiff by severely beat-
ing and seriously injuring him, the plaintiff was properly permitted,
as a witness, to describe the nature of his injuries so sustained;
and an objection that such evidence was merely an opinion or con-
clusion of the plaintiff was properly overruled.   The plaintiff, though
not an expert, was competent to give, in a general way, an approxi-
mately correct description of the bruises and other injuries received
by him from the defendant.

ID.—CONSISTENCY OF PLAINTIFF'S EVIDENCE WITH PHYSICIAN'S TESTI-
MONY—DEFENDANT NOT PREJUDICED.—Where the evidence of the
plaintiff was in harmony with that of his physician, who testified
as an expert, and gave a detailed description of the injuries sus-
tained by the plaintiff, the defendant was clearly not prejudiced by
the ruling permitting plaintiff to testify as to the nature of his
injuries.

ID.—PROOF OF EARNING CAPACITY OF PLAINTIFF—DAMAGES.—The court
properly allowed the plaintiff to prove the wage rate he was re-
ceiving for his labor up to the time of his injury, where it
appeared that, on account of his injuries, he was deprived of any
earnings while confined, as the result thereof, and that he has since
been unable to do the amount of labor he was capable of performing
prior to his injuries.   The earning capacity of the plaintiff prior
to receiving the injuries complained of, in the business which he
had customarily followed, was a proper element to be considered
in the assessment of damages.

ID.—TESTIMONY OF WITNESS TO DOCTOR'S OPERATION.—The court did
not err in allowing a witness who was present when the doctor
examined the plaintiff to describe what the doctor did in preparing
to treat the plaintiff and what he did in order to reset his dislocated
shoulder.   Such evidence, while practically without inherent force,
tended, if anything, to corroborate the doctor as to his treatment of
the plaintiff.

ID.—IMPEACHMENT OF ITALIAN WITNESS FOR DEFENDANT—USE OF
ENGLISH—FOUNDATION—RECORD—OBJECTION UPON APPEAL.—On the
impeachment of a witness for the defendant, who was an Italian,
understanding some English, and who used English, when the founda-
tion for his impeachment was laid upon cross-examination by proof
that upon a trial of defendant in the police court upon a criminal

charge of battery he gave evidence at variance with his evidence
upon the present trial, and there is nothing in the record upon
defendant's appeal to show that the witness did not use English in
the police court, nor that the impeaching witnesses did not under-
stand his language there used, an objection urged that the testimony
of such impeaching witnesses was inadmissible hearsay as to what
the impeached witness then testified to, through an interpreter, is
not available to the defendant upon appeal.

ID.—IMPEACHING TESTIMONY NOT TO COLLATERAL MATTER—QUESTION AS
TO FIRST AGGRESSOR.—The impeaching testimony being with respect
to the circumstances of the trouble between the parties, and as
bearing upon the question whether the defendant or the plaintiff was
the first aggressor, cannot be said to be addressed to a collateral
matter not the subject of impeachment.

ID.—PROPER FOUNDATION FOR IMPEACHMENT — MEMORY OF FORMER
STATEMENT IMMATERIAL.—A proper foundation for the impeaching
evidence was sufficiently laid, where the witness· stated that he
remembered the occasion to which the counsel referred, that the
persons named were present, and that he then gave testimony, which
is all that the statute requires. The answer that he "did not re-
member" whether he made the alleged inconsistent statement did
not render it improper to show, by way of impeachment, that he
did in fact make such statement at the time mentioned.

ID.—IMPEACHMENT OF DEFENDANT—PROPER FOUNDATION.—Where the
defendant was asked on cross-examination whether he testified in
the police court·that he knocked plaintiff down, as to which he said
he had no recollection, this was a sufficient ground for proof that
the defendant did testify or admit in the police court that in the
encounter with plaintiff "he knocked him to the ground," and that
he stated under oath in that court that he "beat said C. J. Ehat,
or did him as well as he could."

ID.—IMMATERIAL FINDINGS UNSUSTAINED—FINDINGS SUSTAINED SUP-
PORTING JUDGMENT.—The fact that some of the findings are unsus-
tained by the evidence is immaterial, where the remaining findings
are fully sustained by the evidence and are sufficient to support the
judgment.

ID.—DAMAGES ALLOWED NOT EXCESSIVE.—It is held that, considering
all of the evidence as to plaintiff's loss of earning power, and the
expenses of his illness, including his doctor's bill, and as to the
circumstances of aggravation attending his injuries, it was in the
power of the court to add to the actual damage sustained such
exemplary damages as would represent a·just punishment for the
wantonness of the·acts of. the defendant resulting in the injuries
complained of, and it cannot be said that the sum of $500, allowed
as damages, was excessive.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Frank Kauke, for Appellant.

U. Grant Hayden, for Respondent.

HART, J.—This action was brought by the plaintiff to recover damages for personal injuries which the complaint alleges were inflicted upon him by the defendant.

The action was tried by the court, a jury having been waived by the parties, and judgment was awarded plaintiff in the sum of $500.

This appeal is by the defendant from the judgment and the order denying him a new trial.

The points urged by the appellant against the validity of the judgment and the order are that certain rulings of the court respecting certain evidence were illegal and harmful to the defendant and that certain findings are not supported by the evidence.

The facts are these: The plaintiff, a man sixty-five years of age at the time he received the injuries complained of, was indebted to the defendant in the sum of $16.75. On the nineteenth day of July, 1909, the plaintiff was working as a laborer in a box-yard in the city of Fresno. In the forenoon of that day, the defendant, accompanied by an Italian by the name of Toschi, went to the box-yard, where they met plaintiff. The defendant spoke to the plaintiff about the indebtedness referred to, asking him for payment of the same. An acrimonious discussion ensued, which was finally followed by a fight, with the result, according to the story of plaintiff, that the latter was severely beaten and seriously injured by the defendant.

The plaintiff, after the trouble ceased, was assisted by a man named Arieta to a physician's office, where his bruises and injuries were given medical attention.

1. The plaintiff was permitted, over an objection interposed by defendant, to describe the nature of his injuries. The spe-

cific reason urged against that testimony was that it could amount to no more than an opinion and a conclusion of the witness. We see no force in the objection. The plaintiff, while not an expert on such matters, was competent to give in a general way an approximately correct description of the bruises and other injuries received by him. Besides, the doctor who waited on him, dressing and otherwise attending to his various wounds, gave to the court a detailed and technical description of plaintiff's injuries, and the testimony of plaintiff on that subject harmonized, generally, with that of the physician. The testimony objected to could not, therefore, have in any event prejudiced the rights of the defendant. Nor did the court err in allowing the plaintiff to state the wage rate he was receiving for his labor up to the time he was injured. The testimony disclosed that plaintiff earned his living as an ordinary laborer; that, on account of the injuries inflicted upon him by defendant, he was confined to his home for eight days, and has, since the trouble, according to his statement, been unable to do the amount of labor he was capable of performing prior to receiving the injuries. The earning capacity of the plaintiff, prior to receiving the injuries complained of, in the business which he had customarily followed, was a proper element to be considered in the assessment of damages. (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237, [116 Pac. 513].)

The court did not err in allowing Arieta, who accompanied the plaintiff to the doctor's office, to state what transpired at said office after the arrival of plaintiff there. The witness merely described, as well as he knew how, what the doctor did in preparing to treat plaintiff and what he did in order to reset plaintiff's dislocated shoulder. The testimony, while practically without any force in any direction, tended, if anything, to corroborate the doctor as to the treatment to which it was necessary to subject the plaintiff for the injuries upon his body.

The objection to the testimony offered in rebuttal by the plaintiff to impeach the witness, Toschi, who testified for the defense, cannot be sustained. It appears that the witness testified with respect to the circumstances of the trouble between the parties before the police court of the city of Fresno, the defendant having been in said court prosecuted upon a

17 Cal. App.—28

charge of battery growing out of said trouble. It appears that his testimony given at the trial of the case at bar varied in some particulars from that given by him at the trial in the police court.

On his cross-examination by counsel for plaintiff in the present case, the witness' attention was called to the disparity between his former testimony and that given in this trial, and his reply as to whether he had made the former statements was, "I don't remember," or "I remember not saying that."

Hayden, attorney for plaintiff, having been present at the trial in the police court, and also the police judge, took the witness-stand in this action for plaintiff in rebuttal, for the purpose of testifying to the statements made by Toschi at the trial in the police court which it was claimed were inconsistent with his testimony in the trial of this case.

One of the objections urged here against the competency of Hayden and the police judge to testify in impeachment of Toschi is that the latter is an Italian, speaks the little English that he is capable of using imperfectly, and gave his testimony at the police court trial through an interpreter, and that Hayden and the police judge were, therefore, permitted to testify only to what the interpreter said that Toschi stated. In other words, it is contended that Hayden's testimony, as well as that of the police judge, in the present trial was hearsay. But the difficulty about this objection is that there is absolutely nothing in the record showing that Toschi did not testify in the English language in the police court. Nor is there any showing that Hayden and the police judge do not understand the Italian language. It does appear, however, that Toschi could speak to some extent in the English language, though imperfectly, for he declared in the present trial in English that he understood certain language (giving it in English) used by the plaintiff in addressing the defendant. In any event, as indicated, the record is not such as to make the objection here considered available to the appellant.

But it is further objected that the matter to which the impeaching testimony was addressed was in its character collateral, and, therefore, not subject to impeachment.

The theory of the defense was that the defendant and Toschi went to the box-yard for the purpose of looking after some boxes which had been left there by a neighbor of the defend-

ant, and that the latter met the plaintiff on the occasion of the affray by mere accident. The plaintiff's theory at the present trial, as was presumably true at the trial in the police court, was that the real purpose of the defendant's visit to the box-yard on that day was to meet the plaintiff and secure from him a settlement of his indebtedness to defendant.

Toschi testified in the police court that he and the defendant went to the box-yard together, but that he did not know the purpose for which the visit was made. At the trial of the case at bar, he testified that he and the defendant visited the box-yard for the purpose of looking for some "sweat boxes." On cross-examination at the trial of the present case, his attention having been first called to his testimony given in the police court, he declared that he did not remember having testified in the last-mentioned court that he did not know the purpose of the visit to the box-yard, and the witness, Hayden, as well as the police judge, Briggs, were permitted, against the objection of the defendant, to testify in rebuttal at the trial of this case that Toschi did so testify in the police court.

While the particular purpose of the visit of the defendant and Toschi to the box-yard would appear to be of little importance in its bearing upon the case as made by the pleadings, since there is no dispute that a fight took place between defendant and plaintiff and there is sufficient evidence to support the finding that the last named was the aggressor, still we are not prepared to say that the testimony offered for the discovery of such purpose was not material. As stated, the theory of the plaintiff seems to have been that the defendant went to the box-yard for the express purpose of asking the former for a settlement of the trifling financial differences between them, and that the meeting, so far as defendant was concerned, was not a supervenient circumstance, as the testimony of Toschi and the defendant in the present trial would indicate. We think Toschi's testimony in the respect referred to was material and admissible, for whatever it might be worth, as bearing upon the question whether the defendant or the plaintiff was the aggressor in the affray which followed the meeting of the two men. The jury, or, as in this case, the judge might, considering it with the other facts, infer from the circumstance that the meeting between the two men was purely accidental, and that the defendant broached the sub-

ject of plaintiff's indebtedness to him in a gentle frame of mind, and that hostilities were initiated by the plaintiff, while, on the other hand, when considered in connection with the evidence of other facts, the circumstance that the meeting was deliberately planned or preconceived by defendant might afford some ground for the inference that the latter approached the plaintiff in a belligerent manner and started the fight. At any rate, we do not think the allowance of the testimony of Hayden and Briggs in impeachment of Toschi is of sufficient importance to justify a reversal on that ground alone.

There is no merit in the contention that a proper foundation for the impeaching testimony was not laid. The witness was asked if he did not, in the presence of certain persons, in the trial in the police court, when giving his testimony, make the statement referred to. The witness stated that he remembered the occasion to which counsel referred; that he remembered that the persons named were present and that he then gave testimony. This is all that the statute requires. "If the witness understood the circumstances of the time and place, the object of this section of the code is satisfied." (*People* v. *Yee Foo,* 4 Cal. App. 730, [89 Pac. 450].)

Nor did the answer, "I don't remember," given by Toschi to the question whether he had made the alleged inconsistent statement in the police court render it improper to show, by way of impeachment, that he did in fact make such statement at the time mentioned. As is said in *People* v. *Mar Gin Suie,* 11 Cal. App. 42, [103 Pac. 951, 958]: "We think that the defendant was entitled as a matter of fairness to have it clearly appear whether the witness did or did not make the inconsistent statement, and that he was not precluded under the rule from showing that the witness did make such inconsistent statement merely because he answered that he did not remember whether he had made it or not"; citing Greenleaf on Evidence, sixteenth edition, section 42.

It is also contended that the court erred to defendant's prejudice in allowing testimony impeaching certain statements made by the defendant himself, the ground of the objection to said testimony being that a proper foundation therefor had not been previously prepared.

The defendant was asked by counsel for plaintiff whether he testified at the trial in the police court that he knocked the plaintiff to the ground, to which he replied that he had no recollection of so testifying on the occasion mentioned. This was a sufficient foundation for the allowance of the testimony of the police judge and the witness Hayden that the defendant did testify or admit in the police court that, in the encounter with plaintiff, he knocked the latter to the ground.

Likewise a sufficient foundation was established for the admission of the testimony of the witness Hayden, by way of impeachment of defendant, that the latter stated under oath in the police court that he "beat the said C. J. Ehat or did him as well as he could, or words to that effect."

There are some other rulings on the evidence to which the defendant objected and excepted which are of no special importance, and, therefore, do not command special notice.

2. The attack upon the findings is without substantial merit.

The plaintiff testified that the defendant struck the first blow and that he thereupon retaliated by striking defendant; that the latter, a younger, larger and heavier man than plaintiff, knocked him to the ground, beat him about the head and kicked him in the ribs. The result of the beating thus administered to him was to cause his jaw to swell, his shoulder to be dislocated, two ribs to be fractured and one of his ears to be injured. He was left in a dazed condition on the ground, and, as before shown, was assisted to the office of a physician by the witness Arieta.

He further testified, as we have seen, that he was confined to his room for some eight days and unable, by reason of the injuries so received, to perform the amount of labor that he was capable of performing prior to the trouble.

Dr. Craycroft, who attended plaintiff, said that "at that time he had a dislocated shoulder joint, and a couple of fractured ribs and some contusions on the face. . . . I had to put him to bed for a few days on account of the ribs, not on account of the shoulder."

There was other testimony corroborative of plaintiff and the doctor relative to the general nature and seriousness of the injuries received by the former.

The defendant flatly contradicted plaintiff as to the origin of the difficulty leading to the fight, claiming that plaintiff

struck the first blow and that he merely returned the blows
to defend himself. But the court was justified in finding
that plaintiff was wantonly and without excuse .beaten and
injured by defendant from the testimony produced by plain-
tiff. · Counsel for appellant in another connection says in his
brief that, in order to find for plaintiff, the testimony of de-
fendant and his witness, Toschi, must be disregarded. This
is quite true, but we must assume that the court, being the
exclusive judge of the credibility of the witnesses and the
weight, effect and evidentiary value of the testimony, did
regard the evidence produced by the defendant as unworthy
of credence, and that, from its point of· view, it found, in
considering it, good and sufficient reasons for so regarding it.

There is, it is true, as counsel for the appellant asserts, no
evidence which supports the finding that the injuries inflicted
upon the plaintiff by the defendant caused the former "to
receive a nervous shock," and it is also true that we have
found no evidence which justifies the finding that plaintiff's
head was "*cut* in several places." But those findings may
be entirely eliminated and disregarded, and still the remain-
ing findings, which are sufficiently justified and sustained by
the evidence, fully and amply support the judgment.

The court found upon sufficient evidence that the defend-
ant "did violently and willfully assault the plaintiff, and did
then and there strike and bruise and knock plaintiff down
and kick him"; that "said bruising, beating and kicking . . .
did cause plaintiff's head to be bruised and swollen . . . ; did
cause plaintiff's left shoulder joint to be dislocated; did cause
plaintiff's body to be bruised and two of plaintiff's ribs to
be cracked, and further did cause plaintiff . . . to be sick
to such an extent that he was confined to his bed for about
eight days immediately following said beating."

These findings, supported, as we have seen, by the evidence,
are manifestly sufficient to uphold the judgment.

5. We cannot say that the amount of damages awarded to
the plaintiff is excessive. It is very clear that plaintiff was
so severely injured that he was unable for many weeks to
pursue his usual employment at all, and for many months
his condition, as the result of his injuries, such as that he
could not perform the same amount of work that he could
formerly or prior to the difficulty with defendant. His earn-

ing power was, therefore, impaired, and this, as before stated, was, of course, an important item to be considered in estimating the damages—an item which, in the extent to which it should operate as a factor in the admeasurement of damages, must be left to the intelligence and the sense of justice of those who must decide the questions of fact.   This item would manifestly include prospective loss in wages as well as loss in that respect already sustained.   The expense—the doctor's fees, etc.—incurred by necessary attention during the period the plaintiff was disabled and ill is also an item to be considered, and, moreover, it was within the power of the court to add to the actual damages found, if warranted by the evidence in so doing, such exemplary damages as would represent a just punishment for the wantonness of the acts of the defendant resulting in the injuries complained of.

After a careful review of the record, we perceive no ground upon which interference with the judgment and the order could be justified, and they are, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.